# EXHIBIT A

**Case:** 2020CA004709AX
**Filed:** 12/07/2020
**Status:** OPEN  **Type:** Circuit Civil  **Judge:** EDWARD NICHOLAS

Parties:

| Party Type | Name | Gender | DOB |
|---|---|---|---|
| Defendant | IMG ACADEMY LLC | | |
| Plaintiff | MICHAEL LAVALLIERE  Attorney: JASON M MELTON | | |

Dockets Key:

| | View | Date | Description | Pages |
|---|---|---|---|---|
| 1 (9) | | 12/07/2020 | CIVIL COVER SHEET | 3 |
| 2 (10) | | 12/07/2020 | CIVIL ATTACHMENT TO COMPLAINT / EXHIBIT 1 - U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION DISMISSAL AND NOTICE OF RIGHTS | 4 |
| 3 (11) | | 12/07/2020 | CIVIL ATTACHMENT TO COMPLAINT / EXHIBIT 1 - U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION DISMISSAL AND NOTICE OF RIGHTS **DUPLICATE FILING AT THE TIME OF INICIATING CASE** | 4 |
| 4 (12) | | 12/07/2020 | COMPLAINT AND JURY TRIAL DEMAND | 18 |
| 5 (13) | | 12/07/2020 | COMPLAINT AND JURY TRIAL DEMAND **DUPLICATE FILING AT THE TIME OF INITIATING CASE** | 18 |
| 6 (14) | | 12/15/2020 | ESUMMONS SUBMITTED TO CLERK ISSUED: IMG ACADEMY, LLC -- ISSUED 12/16/2020 | 2 |
| 7 (15) | | 01/06/2021 | SUMMONS SERVED ON IMG ACADEMY, LLC DECEMBER 21 2020 | 1 |

Filings

**Filing Date**

12/07/2020

**Filing Type**

O DISCR EMP OTHER

**Calim Amount**

$30,001.00

**Cross Claim Amount**

$0.00

**Counter Claim Amount**

$0.00

**Judgment Amount**

$0.00

Receipts:

| Receipt Date | Receipt Number | Tender Amount | Voided Amount | Voided |
|---|---|---|---|---|
| 12/7/2020 | 874371 | $410.00 | - | |
| Totals | 1 receipt(s) | $410.00 | $0.00 | |

Assessments:

| Account Group | Description | Originally Assessed | Paid | Dismissed | Due |
|---|---|---|---|---|---|
| OTH CIV FILING - CA | OTHER CIVIL FILINGS - CIRCUIT CIVIL | $400.00 | ($400.00) | - | - |
| SUMMONS - CA | SUMMONS - CIRCUIT CIVIL | $10.00 | ($10.00) | - | - |

| Account Group | Description | Originally Assessed | Paid | Dismissed | Due |
|---|---|---|---|---|---|
| 2 Account Group(s) | | $410.00 | ($410.00) | $0.00 | $0.00 |

Bonds:

| Bond Type | Active Amount |
|---|---|
| 0 Bond(s) | $0.00 |

Registry:

$0.00

Filing # 117706685 E-Filed 12/07/2020 10:47:54 AM

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT COURT OF THE <u>TWELFTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>MANATEE</u>  COUNTY, FLORIDA

<u>Michael LaValliere</u>
Plaintiff

Case # _____
Judge  _____

vs.
<u>IMG Academy</u>
Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

- ☐ $8,000 or less
- ☐ $8,001 - $30,000
- ☒ $30,001- $50,000
- ☐ $50,001- $75,000
- ☐ $75,001 - $100,000
- ☐ over $100,000.00

### III.    TYPE OF CASE     (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
  ☐ Business governance
  ☐ Business torts
  ☐ Environmental/Toxic tort
  ☐ Third party indemnification
  ☐ Construction defect
  ☐ Mass tort
  ☐ Negligent security
  ☐ Nursing home negligence
  ☐ Premises liability—commercial
  ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
  ☐ Commercial foreclosure
  ☐ Homestead residential foreclosure
  ☐ Non-homestead residential foreclosure
  ☐ Other real property actions

☐ Professional malpractice
  ☐ Malpractice—business
  ☐ Malpractice—medical
  ☐ Malpractice—other professional
☐ Other
  ☐ Antitrust/Trade regulation
  ☐ Business transactions
  ☐ Constitutional challenge—statute or ordinance
  ☐ Constitutional challenge—proposed amendment
  ☐ Corporate trusts
  ☐ Discrimination—employment or other
  ☐ Insurance claims
  ☐ Intellectual property
  ☐ Libel/Slander
  ☐ Shareholder derivative action
  ☐ Securities litigation
  ☐ Trade secrets
  ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

E-Filed with MCCC - 2020CA004709AX- 12/7/2020 10:47 AM - PG 2 of 3

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☐

**IV.   REMEDIES SOUGHT** (check all that apply):
☐ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.   NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

**VI.   IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.   HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☐ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.   IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Jason M. Melton</u>        Fla. Bar # <u>605034</u>
       **Attorney or party**                  (Bar # if attorney)

<u>Jason M. Melton</u>           <u>12/07/2020</u>
(type or print name)         Date

Filing # 117706685 E-Filed 12/07/2020 10:47:54 AM

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR MANATEE COUNTY, FLORIDA
CIVIL DIVISION**

MICHAEL LAVALLIERE,

    Plaintiff,

v.                                                                CASE NO.:

IMG ACADEMY, LLC,

    Defendant.

_____/

**COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff, MICHAEL LAVALLIERE ("Plaintiff"), by and through undersigned counsel,

hereby sues the Defendant, IMG ACADEMY, LLC, ("Defendant"), and alleges as follows:

**JURISDICTION, PARTIES AND VENUE**

1.    This is an action for damages in excess of Thirty Thousand Dollars ($30,000.00)

exclusive of interest and costs for relief of violations of the Americans with Disabilities Act,

("ADA"), Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10, *et seq*, and the Age

Discrimination in Employment Act ("ADEA").

2.    Venue lies within Manatee County because a substantial part of the events giving

rise to this claim arose in this county, where Defendant operates and is conducting business.

3.    At all times material, Plaintiff is and was a resident of the State of Florida.

4.    At all times material, Defendant is and was a Limited Liability Company that

operates a multi-sport training and educational facility in Manatee County.

5.    Defendant is an employer as defined by the Florida Civil Rights Act ("FCRA"), the

Americans with Disabilities Act of 1990 ("ADA"), and the Age Discrimination in Employment

Act ("ADEA").

6.    Plaintiff was an "employee" of Defendant within the meaning of the FCRA, the

Americans with Disabilities Act of 1990 ("ADA"), and the Age Discrimination in Employment Act ("ADEA").

7.    Plaintiff has complied with all conditions precedent prior to the filing of this action. On or about October 5, 2018, Plaintiff timely dual filed a written charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

8.    This action is being filed within four years of the Defendants' discriminatory action and within 90 days of receiving the EEOC's Notice of Right to Sue. (*See* Attached Exhibit 1).

9.    Plaintiff has exhausted all of his administrative remedies and has met all conditions precedent prior to filing this lawsuit.

## GENERAL ALLEGATIONS

10.    Defendant engaged in handicap/disability, and age discrimination, and retaliation in violation of the FCRA, the ADA and ADEA.

11.    Plaintiff was born August 18, 1960.

12.    Plaintiff is a former professional baseball catcher. He played in Major League Baseball (MLB) for the Philadelphia Phillies, St. Louis Cardinals, Pittsburgh Pirates, and Chicago White Sox.

13.    Plaintiff was recruited to join the staff at IMG Academy in October, 2017.

14.    Snagging a long-tenured Major League Baseball catcher for the IMG roster made Mr. LaValliere a valued commodity.  Unfortunately, Defendant treated Mr. LaValliere as a commodity.

15.    Plaintiff was employed by the Defendant as a full-time baseball coach for approximately one year before his discriminatory termination.

16.     Twelve years behind the plate caused serious damage to both of Mr. LaValliere's knees.

17.     In September 2015, Mr. LaValliere had his right and left knees surgically replaced, causing visible and noticeable scars. Also, visible and noticeable was Plaintiff's limping, and difficulty walking, including into his interview with the Defendant. It was during the interview that Plaintiff advised of his physical limitations due to his multiple surgeries and lengthy career crouched behind home plate. Plaintiff informed Defendant of his mobility limitations, especially over long distances.

18.     As a result of the double knee replacement, Plaintiff became disabled to the extent that the knee replacements limited major life activities. Plaintiff's knees and leg condition caused a substantial impairment that significantly limits or restricts major life activities. Plaintiff's disability substantially limited the major life activities of walking, limited mobility, the inability to stand for prolonged periods of time, and performing other manual tasks. Plaintiff's impairments constituted a "handicap" for purposes of the FCRA and disability under the ADA.

19.     Despite his handicap, Plaintiff was able to perform the essential functions of his job with or without reasonable accommodations and, therefore, was a qualified individual with a handicap or disability pursuant to the FCRA and ADA.

20.     Plaintiff began his employment with Defendant on or about October 2017.

21.     Plaintiff was initially assigned to coach a small group of students who wished to improve their baseball skills, more specifically, their catching abilities.

22.     Plaintiff performed these requisite job duties free from any criticism, discipline, punishment or reprimand. He was a model coach and employee.

23.     In June 2018, Defendant expanded and altered Plaintiff's job duties. This resulted in substantial increase in Plaintiff's physical workload.

3

24.    Defendant imposed the new work requirements with full knowledge of Plaintiff's handicap/disability, and mobility limitations previously disclosed upon hire.

25.    Instead of the small groups previously assigned to Plaintiff, on or about June 2018, Defendant now required Plaintiff coach an additional 60 to 100 new students who attended Defendant's one-week long summer camp programs.

26.    Defendant ordered Plaintiff to instruct "Game Changer," a specific camp offered to students marketed as a more personalized three-to-one student to teacher ratio. More job responsibilities, and more students meant that Plaintiff needed to cover more ground and more distance.

27.    The increase in Plaintiff's responsibilities required traversing multiple baseball fields, batting cages and other practice venues, not required previously and contrary to Plaintiff's disclosure of limited walking and mobility.

28.    Covering extended areas on foot caused Plaintiff difficulty in performing his job duties due to his handicap/disability. As such, pursuant to the FCRA, and ADA Plaintiff made requests for reasonable accommodations to Camp Director, Nick Phelps.

29.    Plaintiff specifically requested one or more assistant coaches to aid in the supervision of students across multiple fields, spanning a large amount of land and distance for one person to travel, and cover.

30.    Plaintiff had a good faith, reasonable belief that this requested accommodation was reasonable because he was personally aware that Defendant provided assistant coaches to other staff employed by Defendant in similar coaching roles and positions working during the same time period.

4

31.    To allow Plaintiff to perform his job duties as a person with a disability, Plaintiff requested he be permitted the use of a golf cart to assist him with covering the vast expanse of Defendant's 500-acre campus.

31.    Similarly, Plaintiff had a good faith, reasonable belief the his request for a golf cart was a reasonable accommodation because Defendant allowed employees to routinely use golf carts to navigate Defendant's campus, fields, and property.

32.    Defendant had golf carts on its campus.

33.    Defendant could afford additional golf carts in its budget.

34.    Defendant owned multiple golf carts.

35.    Defendant could have granted Plaintiff's accommodation request for a golf cart.

36.    Allowing Plaintiff use of a golf cart imposed no undue burden or hardship on Defendant.

37.    Plaintiff's request for a golf cart was also made because golf carts were routinely provided to similarly situated employees who were younger than Plaintiff, and who were not individuals with a disability, or mobility impairments.

38.    Beginning on or about June 4, 2018 and for approximately the next 10 days, Plaintiff made requests for reasonable accommodations, including but not limited to, the aforementioned golf cart, and additional staff, an assistant, or someone to come in for relief as a helper.

39.    Defendant balked at Plaintiff's requested accommodations.

40.    Defendant declined to provide the requested golf cart.

41.    Defendant declined to provide any assistance, by way of a part-time helper, an assistant coach, or any number of other able substitutes offered by Plaintiff.

42.    Defendant did not engage in an interactive dialogue to determine whether the

5

accommodation requests were reasonable.

43. Defendant did not engage in an interactive dialogue to determine whether the accommodation requests were available.

44. On or about June 13, 2018, Plaintiff coached large groups of students alone for nearly seven hours.

45. The 7 summer hours were during peak highs for temperature in the grueling Florida sun.

46. Given these conditions, Plaintiff had been concerned for his health and the safety. As a conscientious coach, aware of the tragedies that have befallen many young athletes who have suffered health calamites due to boiling weather conditions, Plaintiff was also concerned for the health and safety of his students.

47. Plaintiff is a very large individual.

48. Plaintiff was 330 pounds which is over twice the amount a person should be for his size. Plaintiff had a Body Mass Index of 48.7.

49. Plaintiff was obese, and excessively heavy. This impacted him as he suffered from diabetes, and high blood pressure. Further, his weight impacted his physiological condition. Plaintiff's weight impacted major life activities, including breathing, walking, carrying and lifting heavy objects for long distances. Plaintiff's weight especially impacted his breathing, and mobility in intense heat.

50. Instead of keeping Plaintiff hydrated, and its campers and students ready to play with water at the ready, Defendant neglected Plaintiff and its athletes by not providing water, Gatorade, or reasonable access to hydration during their workouts and sessions.

51. Defendant maintained a policy that it would not supply water to its workers or employees, including Plaintiff.

6

52.    During this summer month of June 2018, Defendant did not provide Plaintiff with water while he was working Defendant's camp.

53.    During this summer month of June 2018, Defendant refused to provide Plaintiff with water while he was working Defendant's fields.

54.    The Florida summer heat, coupled with his walking and mobility limitations due to his knees, and age, and a lack of accessible water on Defendant's premises, cause Plaintiff serious concern for his health, including fears that he would suffer from heat stroke, or his physiological conditions would be impacted by the heat and the lack of water and he could possibly feint, or worse.

55.    Plaintiff raised these concerns with Defendant.

56.    Plaintiff reported that he was struggling with Defendant's working conditions and that at his age, and with his health issues, and physical limitations it was unreasonable for him to navigate three fields on foot, with no assistance, no golf cart, and limited access to water, Gatorade or hydration.

57.    In another attempt to compromise with Defendant, Plaintiff requested that Defendant at least provide Plaintiff with accessible water, and provision of suitable hydration to limit Plaintiff from walking even longer distances to remain hydrated during work hours.

58.    Plaintiff requested multiple accommodations from Defendant, including a golf cart, facilities that were more shaded during the hottest hours of the day, equipment to create or assist with additional shade, and water and Gatorade bottles or jugs made available and accessible for not only himself, but for his students.

59.    All accommodation requests were reasonable.

60.    No request imposed an undue hardship on Defendant.

61.    No request resulted in an interactive dialogue with Defendant.

7

62.   All reasonable requests for accommodations were denied.

63.   As a result of Defendant's continued refusal to provide a reasonable accommodation or engage in an interactive dialogue Plaintiff's health and safety was jeopardized.

64.   On or about June 13, 2018, Plaintiff reported concerns for his health and safety due to lack of water, increased walking requirements, and the refusal to engage in interactive dialogue concerning Plaintiff's accommodation requests and the effective denial of his requests.

65.   Plaintiff identified, that because water was so scarce, and the camp was conducted in the middle of the day at the zenith of the hottest time of the year, his health was at risk.

66.   Plaintiff reported that the lack of water and hydration was a serious health risk for someone his weight and size, at his age, who has difficulty walking, and running for long distances.

67.   Plaintiff identified that the combination of the hot sun, long distances, and lack of water was dangerous for him to work in and that the lack of assistants, helpers, or a golf cart was now exposing him to other health concerns because he could not readily gain access to water. This could complicate his diabetes, or high blood pressure. It also put additional strain on his already surgically repaired knees.

68.   Plaintiff requested water, hydration sources, added shaded areas, in addition to his previous requests to lessen the chance of heat stroke, or other maladies caused by excessive heat, excessive weight, and excessive exertion.

69.   Defendant ignored these concerns and advised Plaintiff that he was responsible for water, and no help was forthcoming.

70.   Defendant was forcing Plaintiff to work in conditions that were unsafe, and that Defendant knew Plaintiff could not perform job duties without a reasonable accommodation.

71.   On June 13, 2018, Plaintiff advised he would be forced to resign given the working conditions and lack of concern, communication, care or interest in Defendant discussing and

8

granting any reasonable accommodations that would allow Plaintiff to perform his job functions in a safe manner.

72.    Requesting reasonable accommodations is protected activity under the ADA and the FCRA.

73.    On or about June 14, 2018, in close temporal proximity to Plaintiff's request for accommodations and statement that he would need to resign if his requests continued to be ignored, Defendant terminated Plaintiff's employment.

74.    At the time of his termination, Plaintiff was the oldest coach required to traverse multiple fields.

75.    When Plaintiff made requests for accommodations, he would point out that other coaches were treated better than him.

76.    In response Defendant indicated that he needed to be as active, and have the same ability as the significantly younger staff.

77.    Plaintiff inquired why the younger staff were treated better than he was. Defendant offered no explanation, only that they were able to do the job.

78.    Due to his age, his large size, and his recurring knee problems, accessing water fountains, water jugs, Gatorade, running to shaded areas were made exceedingly difficult or impossible without the requested accommodations.

79.    Indeed, providing a golf cart to Plaintiff, more shade, accessible water bottles, jugs, Gatorade, and more assistants or help, rescheduling certain activities are all reasonable accommodations. None even remotely impose an undue hardship to IMG.

80.    No similarly situated employees who were not disabled or younger than Plaintiff and who did not engage in protected activity were subjected to similar adverse employment actions.

9

81.     The above-described conduct constitutes discrimination and retaliation in violation of the Florida Civil Rights Act, the Americans With Disabilities Act and the Age Discrimination in Employment Act.

82.     Plaintiff has suffered damages for lost wages, lost benefits, emotional distress, public humiliation and embarrassment, depression and other damages as a result of this unlawful conduct.

83.     Defendant's unlawful actions were intentional, willful, malicious and/or done in callous disregard for Plaintiff's rights

84.     Plaintiff has been required to retain the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

85.     Plaintiff requests a jury trial for all issues so triable.

## COUNT I
### Handicap Discrimination in Violation of the FCRA

86.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 85 as though fully set forth herein.

87.     Defendant's conduct as herein alleged violated the FCRA, which prohibits disability/handicap discrimination.

88.     The foregoing actions of Defendant constitute discrimination against Plaintiff based upon his disability/handicap. Plaintiff was subjected to disparate treatment based on his disability/handicap. Specifically, Defendant required Plaintiff to perform job duties Defendant knew Plaintiff could not perform because of his disability. Plaintiff informed Defendant of his mobility limitations over long distances, Defendant added further distances, extra fields, and areas for Plaintiff to traverse. Defendant disregarded Plaintiff's concerns and forced him to struggle to perform his job functions. Defendant made ableist comments that non-disabled, younger staff were

10

able to do their jobs without the limitations identified by Plaintiff. Defendant treated Plaintiff more harshly than non-handicapped employees. Defendant terminated Plaintiff's employment without offering any explanation, or if performance related, without offering Plaintiff any form of progressive discipline offered other staff. Additionally, Defendant refused to grant Plaintiff's request for reasonable accommodation for his disability/handicap.

90.    Defendant's actions were willful and done with malice.

91.    As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

92.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II
### Failure to Provide Reasonable Accommodation in Violation of the FCRA

93.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 92 as though fully set forth herein.

94.    Defendant's conduct as herein alleged violated the FCRA, which requires an employer to provide reasonable accommodations with respect to an employee's disability/handicap.

95.    The foregoing actions of Defendant constitute discrimination against Plaintiff based upon his disability/handicap because Defendant refused to grant Plaintiff's request for reasonable accommodation for his disability/handicap and because Defendant refused to engage in an interactive dialogue to determine an appropriate reasonable accommodation.

96.    Defendant's actions were willful and done with malice.

97.    As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

98.    Plaintiff requests relief as described in the Prayer for Relief below.

11

## COUNT III
### Retaliation in Violation of the FCRA

99.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 98 as though fully set forth herein.

100.    Defendant's conduct as herein alleged violated the FCRA, which prohibits retaliation because of statutorily-protected activity.

101.    Plaintiff engaged in statutorily-protected activity under the FCRA by repeatedly requesting a reasonable accommodation. The foregoing actions of Defendant in terminating Plaintiff constitute retaliation against Plaintiff because of his statutorily-protected activity.

102.    Defendant's actions were willful and done with malice.

103.    As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

104.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
### Disability Discrimination in Violation of the ADA

105.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 104 as though fully set forth herein.

106.    Defendant's conduct as herein alleged violated the ADA, which prohibits disability discrimination.

107.    The foregoing actions of Defendant constitute discrimination against Plaintiff based upon his disability. Plaintiff was subjected to disparate treatment based on his disability. Specifically, Defendant required Plaintiff to perform job duties Defendant knew Plaintiff could not perform because of his disability. Plaintiff informed Defendant of his mobility limitations over long distances, Defendant added further distances, extra fields, and areas for Plaintiff to traverse. Defendant disregarded Plaintiff's concerns and forced him to struggle to perform his job functions.

Defendant made ableist comments that non-disabled, younger staff were able to do their jobs without the limitations identified by Plaintiff. Defendant treated Plaintiff more harshly than non-disabled employees. Defendant terminated Plaintiff's employment without offering any explanation, or if performance related, without offering Plaintiff any form of progressive discipline offered other staff. Additionally, Defendant refused to grant Plaintiff's request for reasonable accommodation for his disability.

108. Defendant's actions were willful and done with malice.

109. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

110. Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT V**

**Failure to Provide Reasonable Accommodation in Violation of the ADA**

111. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 110 as though fully set forth herein.

112. Plaintiff informed the Defendant of the need for an accommodation due to his disability, including but not limited to a golf cart provided to other staff members, additional staff to assist with additional duties assigned by Defendant, reasonable access to water and shade to assist Plaintiff in the performance of his daily job duties.

113. According to the U.S. Equal Employment Opportunity Commission, when an employee requests an accommodation for a disability, the employer must "engage in an informal process to clarify what the individual needs and identify the appropriate reasonable accommodation ("interactive dialogue")." EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, paragraph 22

(Oct.17, 2002).

114.    Defendant refused to engage in an interactive dialog after Plaintiff requested a reasonable accommodation.

115.    Providing the accommodations requested by Plaintiff would have been reasonable.

116.    Defendant discriminated against Plaintiff because of his disability/handicap by refusing to engage in an interactive dialogue to evaluate appropriate reasonable accommodations for his disability/handicap.

117.    Defendant's conduct as herein alleged violated the ADA, which required an employer to provide reasonable accommodations with respect to an employee's disability. Defendant failed to do so.

118.    The foregoing actions of Defendant constitute discrimination against Plaintiff based upon his disability because Defendant did not grant Plaintiff a reasonable accommodation for his disability and because Defendant refused to engage in the interactive dialogue to determine an appropriate reasonable accommodation.

119.    Defendant's actions were willful and done with malice.

120.    As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered damages, to which Plaintiff is entitled to legal and injunctive relief.

121.    Plaintiff requests relief as described in the Prayer for relief below.

## COUNT VI
### Retaliation in Violation of the ADA Engaging in Protected Activity

122.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 121 as though fully set forth herein.

123.    Plaintiff was retaliated against in violation of the ADA.  Plaintiff requested a reasonable accommodation pursuant to the ADA and as such engaged in protected activity.

14

124.    In close temporal proximity (less than 30 days) to his request for reasonable accommodations because of a disability Defendant terminated Plaintiff.

125.    Defendant had not previously disciplined, reprimanded or punished Plaintiff prior to his termination.

126.    Defendant's actions were willful and done with malice.

127.    As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered damages for lost wages, lost benefits, emotional distress, insecurity, embarrassment, depression and other damages as a result of this unlawful conduct for which the Plaintiff is entitled to legal and injunctive relief.

128.    Plaintiff hereby requests all relief set forth in the Prayer for Relief below.

## COUNT VII
## Age Discrimination in Violation of the FCRA

129.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 128 as though fully set forth herein.

130.    Plaintiff was subjected to disparate treatment based on his age.  Plaintiff was subjected to substantially worse working conditions negatively impacting his ability to perform his job functions including but not limited to: limited and restricted access to water, hydration when necessary; no assistance, help during the course of his employment when requested, and termination when Plaintiff insisted on material changes to allow Plaintiff to perform his job functions, only to be repeatedly compared to substantially younger staff, and told they were able to do the job.

131.    No similarly situated employees who were younger than Plaintiff were subjected to similar adverse employment actions or working conditions that materially interfered with Plaintiff's ability to perform his job duties.

15

132.    The foregoing actions of Defendant constitute discrimination against Plaintiff based upon his age.

133.    Defendant's conduct as herein alleged violated the FCRA, which prohibits age discrimination.

134.    Defendant's actions were willful and done with malice.

135.    As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

136.    Plaintiff requests relief as described in the Prayer for Relief below.

<u>**COUNT VIII**</u>
**Age Discrimination in Violation of the ADEA**

137.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 136 as though fully set forth herein.

138.    Plaintiff was subjected to disparate treatment based on his age. Plaintiff was subjected to substantially worse working conditions negatively impacting his ability to perform his job functions including but not limited to: limited and restricted access to water, hydration when necessary; no assistance, help during the course of his employment when requested, and termination when Plaintiff insisted on material changes to allow Plaintiff to perform his job functions, only to be repeatedly compared to substantially younger staff, and told they were able to do the job.

139.    No similarly situated employees who were younger than Plaintiff were subjected to similar adverse employment actions or working conditions that materially interfered with Plaintiff's ability to perform his job duties.

140.    The foregoing actions of Defendant constitute discrimination against Plaintiff based upon his age.

16

141.    Defendant's conduct as herein alleged violated the ADEA, which prohibits age discrimination.

142.    Defendant's actions were willful and done with malice.

143.    As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

144.    Plaintiff requests relief as described in the Prayer for Relief below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

1.    Enter a declaratory judgment that the practices complained of in this complaint are unlawful and violate the FCRA, ADA and ADEA;

2.    Grant all injunctive relief necessary to bring Defendant into compliance with the FCRA ADA and ADEA;

3.    Order Defendant to pay the wages, salary, employment benefits, and other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions, in amounts to be proven at trial;

4.    Order Defendant to pay compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

5.    Order Defendant to pay exemplary and punitive damages;

6.    Order Defendant to pay attorneys' fees and costs of the action;

7.    Order Defendant to pay interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest; and

8.    Grant any further relief that the Court deems just and proper.

Dated this 4th day of December 2020.

Respectfully submitted,

WHITTEL & MELTON, LLC
*/s/ William Sheslow*
William J. Sheslow, Esq.
Florida Bar No.: 92042
Jason M. Melton, Esq.
Florida Bar No.: 605034
11020 Northcliffe Boulevard
Spring Hill, Florida 34608
Telephone: (352)683-2016
Facsimile: (352)556-7533
will@theFLlawfirm.com
Jason@theFLlawfirm.com
service@theFLlawfirm.com
pls@theFLlawfirm.com
jwalsh@theFLlawfirm.com
*Attorneys for Plaintiff*

# Exhibit 1

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Mike LaValliere<br>3768 59th Ave.,<br>Bradenton, FL 34210 | From: | Tampa Field Office<br>501 East Polk Street<br>Room 1000<br>Tampa, FL 33602 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 511-2019-01481 | Jeffrey L. Nelson,<br>Investigator | (813) 202-7914 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

*Evangeline Hawthorne*                                    9/8/2020

| Enclosures(s) | Evangeline Hawthorne,<br>Director | (Date Mailed) |
|---|---|---|

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge __within 90 days__ of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed *within 90 days* of the date this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than __2 years (3 years)__ before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10 -- not 12/1/10* -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do __not__ relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request __within 6 months__ of this Notice. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), "**major life activities**" now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➤ Only one major life activity need be substantially limited.

➤ With the exception of ordinary eyeglasses or contact lenses, the **beneficial effects of "mitigating measures**" (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) are **not considered** in determining if the impairment substantially limits a major life activity.

➤ An impairment that is "**episodic**" (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it would be substantially limiting when active.

➤ An impairment may be substantially limiting even though it lasts or is expected to last **fewer than six months.**

"Regarded as" coverage:

➤ An individual can meet the definition of disability if an employment action was taken because of an actual or perceived impairment (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

Filing # 118222328 E-Filed 12/15/2020 11:55:37 AM

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR MANATEE COUNTY, FLORIDA
CIVIL DIVISION

MICHAEL LAVALLIERE,

    Plaintiff,

v.

                                  CASE NO.: 2020CA4709

IMG ACADEMY, LLC,

    Defendant.

_____/

Date: 12/21/20 Time: 8:45h
MCN #111
is a certified process server in the
Circuit and County Courts in and for the
Second Judicial Circuit

**SUMMONS**

THE STATE OF FLORIDA)
TO EACH SHERIFF OF THE STATE)

    **YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint or Petition in the above-styled cause upon the Defendant:

**IMG ACADEMY, LLC,**
**c/o Corporation Service Company, Registered Agent**
**1201 Hayes Street**
**Tallahassee, FL 32301**

    Each Defendant is required to serve written defenses to the Complaint or Petition in this action on the attorney for the Plaintiff:

**William Sheslow, Esq.**
**Jason M. Melton, Esq.**
**Whittel & Melton, LLC**
**11020 Northcliffe Boulevard**
**Spring Hill, FL 34608**
**Service Email:**
**will@theFLlawfirm.com**
**Jason@theFLlawfirm.com**
**jwalsh@theFLlawfirm.com**
**pls@theFLlawfirm.com**
**Service@theFLlawfirm.com**

within 20 days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the Defenses with the Clerk of this Court either before service on the Plaintiffs' attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

**WITNESS** my hand and seal of said Court
Dated this _16_ day of _DECEMBER_, 2020.

Angelina Colonneso
Manatee County Clerk of The Circuit Court

Manatee County, Clerk of Court
Deputy Clerk

In and for Manatee County:

If you cannot afford an attorney, contact Gulfcoast Legal Services at (941) 746-6151 or www.gulfcoastlegal.org, or Legal Aid of Manasota at (941) 747-1628 or www.legalaidofmanasota.org. If you do not qualify for free legal assistance or do not know an attorney, you may email an attorney referral service (listed in the phone book) or contact the Florida Bar Lawyer Referral Service at (800) 342-8011.

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Manatee County Jury Office, P.O. Box 25400, Bradenton, Florida 34206, (941)741-4062, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.